JONES, Justice.
This suit involves the liability on a savings and loan blanket bond. The ground of liability being alleged to be losses through dishonest, fraudulent, criminal acts of employees. The suit was in the Chancery Court of the First Judicial District of Hinds County where judgment was rendered in favor of appellees for $50,289.90, plus interest, and appellant hereinafter referred to as the bonding company appeals to this Court.
The bonding company filed three pleas in bar — one based upon Section 10 of the bond. All of these pleas, as well as special defenses also pleaded, were overruled.
In view of the decision of this Court, it is only necessary to discuss the first mentioned plea in bar.
*71 Section 10 of the bond sued upon provided :
“This bond shall terminate in its entirety * * * immediately upon the taking over of the Insured by a receiver or other liquidator or by State or Federal officials, or (d) immediately upon the taking over of the Insured by another institution. * * * ”
Our remarks are directed mainly to the last clause of the quoted section.
The bond was issued October S, 1962, in favor of “Washington Savings.” A rider was placed thereon dated February 19, 1964, effective as of December 12, 1963, providing:
“The Underwriter gives its consent to the change of the Name of the Insured from WASHINGTON SAVINGS to GREAT SOUTHERN SAVINGS & LOAN, INC.”
It was shown savings and loan associations often change their names. It was stipulated that Washington Savings was originally incorporated as “Insured Savings & Loan” domiciled in Mississippi City. Later the domicile was changed to 174 Griffith Street, Jackson, Mississippi. The name was changed on December 12, 1960, to Washington Insured Savings & Loan Association, and domicile changed to North State Street, in the City of Jackson; in 1962, the name again was changed to Washington Savings. It was further stipulated that Great Southern was originally chartered November 28, 1960, as Church Finance Savings & Loan Association. In October 1961 the name was changed to Great Southern Savings & Loan Association.
At the time of the last change of name to Great Southern Savings & Loan Association and at the time hereinafter mentioned when the stock of said association was purchased by one Paul H. Noe, said Great Southern Savings & Loan Association was not conducting business.
On June 6, 1963, a bill of complaint was filed in the Chancery Court of the First Judicial District of Hinds County by the executive officer of the Savings and Loan Board of the State of Mississippi seeking to enjoin Washington Savings from operating as a savings and loan association and also seeking the appointment of a receiver of said association. The State Board of Savings & Loan Associations met on July 3, 1963, and there was presented to it by an Assistant Attorney General a proposal by American Savings Insurance Company to assume control of Washington Savings through transfer of sufficient capital stock to assure stock control. The insurance company agreed to pay all shareholders who asked for their money and to cease soliciting share accounts; also to place control of the association in the hands of financially responsible persons within a reasonable time, or put it in voluntary receivership. This proposal was unanimously accepted by the board, and the bill of complaint filed was withdrawn.
The American Savings Insurance Company was the insurance corporation which had insured the savings account of Washington Savings. As a part of said agreement it was understood that there would be assigned to American Savings 110,771 shares of Washington Savings capital stock presently held by American Trust Company and possibly others; that there would be assigned to another person 7331 shares of the stock and 10,000 should be retained by the American Trust Company. All airline credit cards and any and all other credit cards issued to Washington Savings should be surrendered immediately and no further use thereof be made.
It was stipulated that prior to August 13, 1963, the capital stock mentioned in said agreement was transferred to American Savings Insurance Company thereby placing that company in control of a majority of the capital stock of said association. A meeting of the members of said association was called and held on August 24, 1963, when an Executive Committee of H. J. *72 Hendrick, A. F. Jernigan and Bernard Shamp were authorized and directed to sell all of the assets of Washington Savings to a state savings and loan association and to transfer the savings account of Washington Savings to the association so acquiring such assets. The members of this committee were all employees of American Savings Insurance Company.
On the same day, August 24, 1963, an agreement was made between Washington Savings, American Savings, Great Southern, and one Paul H. Noe, under the terms of which Great Southern Savings & Loan Association bought all of the assets of Washington Savings. Great Southern assumed all of the savings share liability as consideration for the purchase of the assets, except certain shares registered in the name of one Norman Grasky, et al. Washington Savings continued to operate as a savings and loan association until the middle of October 1963. At that time, Great Southern under Paul H. Noe (owner of all its stock) entered into possession of the offices occupied by said Washington Savings, took physical possession of the notes and deeds of trust formerly held by Washington as assets, proceeded to make collections thereon and showed all of the assets referred to in said agreement as assets on its (Great Southern’s) books. Great Southern also showed the share account liability as its share account liability and certain liabilities referred to in the agreement of American Savings Insurance Company as the liability of Great Southern. August 26, 1963, Paul H. Noe was elected President of Great Southern; David L. Peel, Executive Vice President; and, Clifford D. Noe, Secretary and Treasurer; None of these officials had previously been with Washington Savings. They were also directors of Great Southern and so served as directors and officers until the receiver for Great Southern was appointed on April 1, 1964.
Paul H. Noe purchased all of the outstanding capital stock of Great Southern and remained sole stockholder thereof until after the receiver was appointed for it on April 1, 1964.
The bonding company wrote Washington Savings on September 16, 1963 asking for an up-to-date list of employees and their duties so that a renewal notice (including premium due) of the bond might be made. In response thereto, Washington Savings forwarded an application for bond which was on the form of the Fireman’s Fund Insurance Company.
The bonding company wrote Washington Savings on September 30th, that they had, in response to the bonding company’s letter of January 16th, requesting a list of employees, sent a Fireman’s Fund application which asked for different coverage from what they had. On October 2, 1963, there was a letter from Washington Savings signed by Bernard Shamp asking that the bond be renewed for the same amounts as previously issued, and, in this letter, it was stated: “There will be a new owner of this corporation within a short time, and we are sure he will employ more help. We will send in a new list of employees.”
On December 10, 1963, the Great Southern Savings & Loan Association forwarded its check to cover the premiums due and asked for an endorsement changing the name of the insured from- Washington Savings to Great Southern Savings & Loan, Inc.
This letter was on the letterhead of Great Southern Savings & Loan Association, but it bore the same street address, the same telephone number, and the same post office box as the letterhead of Washington Savings on which the letter asking for the renewal of the bond was written on October 2, 1963.
In the letter of September 30th from the bonding company to Washington Savings, the company had advised the savings company that “before proceeding with issuance of renewal of this bond it will be *73 appreciated if you will advise the amount of coverage desired.” In the letter of October 2, 1963, Washington Savings requested that the bonds be renewed for the same amounts and on the same form as the original bond. It was in response to the letter of December 10, 1963, heretofore mentioned and asking for an endorsement “changing from Washington Savings to Great Southern Savings & Loan, Inc., 415 East Capitol Street, Jackson, Mississippi, P. O. Box 185” (the same address as Washington Savings) that the bonding company issued the rider hereinbefore mentioned under date of February 19, 1964, effective December 12, 1963 — two days after Great Southern’s letter of December 10, 1963, which said rider provided as here-inbefore stated, “The underwriter gives its consent to the change of the name of the insured from Washington Savings to Great Southern Savings & Loan, Inc.”
All items for which recovery was sought occurred in and after November 1963 which was some months after Washington Savings & Loan had ceased to operate as shown by the stipulation and after all of its assets had been transferred to another separate and unconnected institution — Great Southern Savings & Loan, Inc.
It is clear that there were not two policies issued, but there was only one policy with a renewal thereof.
It is claimed, however, that the letter of October 2, 1963, from Washington Savings to the bonding company in which it was stated, “There will be a new owner of this corporation within a short time, and we are sure he will employ more help,” was sufficient to estop the bonding company from claiming a mere renewal. However, this letter was written on October 2nd, and more than two months afterwards, on December 10, 1963, Great Southern, occupying the same office, the same address, the same post office box, and the same telephone, simply wrote and asked for a change of the same of the insured. In view of the proof that changes of name were frequent and, as stipulated, the changes of names of the two separate corporations here involved, we cannot see how the bonding company was estopped. Furthermore, this statement as to a new owner was subject to the interpretation that there would be a change of ownership of the stock, rather than a transfer of all assets and liabilities to another independent corporation. Great Southern owed some duty to the bonding company and should have advised them it had taken over Washington Savings and desired a bond itself.
In our opinion, the record is clear that Washington Savings was taken over by a distinct and separate institution, including different stockholders, different officers, and that the bonding company had no notice of this until after the asserted claims had arisen; that the bonding company had done nothing to estop itself; and, that the facts bring the case squarely within the last clause of Section 10 of the bond hereinbefore quoted.
We, therefore, are affirming the case on cross-appeal, and, on direct appeal, we are reversing and entering judgment here for the appellant bonding company.
Affirmed on cross-appeal; reversed and judgment entered here for appellant bonding company on direct appeal.
ETHRIDGE, C. J., and RODGERS, BRADY and SMITH, JJ., concur.