KELLY ASSOCIATES, LTD, Appellant,

v.

The AETNA CASUALTY AND SURETY COMPANY, Appellee.

No. C14–82–803CV.

Court of Appeals of Texas, Houston (14th Dist.).

Dec. 1, 1983.

Rehearing Denied Jan. 12, 1984.

Richard P. Colquitt and Bass Wallace, Houston, for appellant.

Osborne J. Dykes, Fulbright & Jaworski, Houston, for appellee.

Before JUNELL, MURPHY and SEARS, JJ.

## OPINION

JUNELL, Justice.

This is an appeal from an order of the court below granting summary judgment in favor of appellee Aetna Casualty and Surety Company. The trial court ruled that appellee had no liability to appellant Kelly Associates, Ltd., a Texas limited partnership, under a Stockbrokers Blanket Bond dated July 21, 1977. We affirm.

The bond was designed to protect appellant from losses for employee misconduct such as forgery, alteration, misplacement, or mysterious unexplainable disappearance. The bond protected the insured only for losses discovered during the bond period.

On September 25, 1981, appellant sold all or substantially all of its assets to Fidelity Brokerage Services, Inc., a Massachusetts firm. A little over two months later, on November 27, 1981, appellant discovered a loss of over $200,000.00 caused by the misappropriation of an employee.

Appellant gave notice of discovery of loss to appellee on December 17, 1981. Appellee denied appellant's claim based upon Section 11 of the bond which reads in pertinent part as follows:

This bond shall be deemed terminated or cancelled as an entirety . . . immediately upon the taking over of the Insured by another business entity.

Appellant presents a single point for this court to consider: whether the trial court erred in granting appellee summary judgment based on termination of the bond due to the taking over of appellant by another business entity.

The point centers on whether the actions of appellant prior to the discovery of loss constituted a "taking over" such that appellee is not liable under the provisions of the bond. We conclude that appellant had indeed been "taken over" by Fidelity Brokerage Services and affirm the trial court's granting of appellee's motion for summary judgment.

No Texas case has defined the term "taking over," either in regards to an insurance contract or otherwise. We therefore turn to other jurisdictions. In a non-insurance case, *New York Trust Co. v. Farmers' Irrigation District,* 280 F. 785, 795 (8th Cir. 1922), the court noted that the "primary meaning" of the words is "to assume control or management of."

Two cases have specifically addressed the concept of a "taking over" in an insurance context. In *First Nat'l. Life Ins. Co. v. Fidelity & Deposit Co.,* 525 F.2d 966 (5th Cir.1976), the Fifth Circuit discussed an employee fidelity bond. It held that the Alabama district court correctly decided to use Texas law to interpret the bond provisions.

There, as in appellant's case, the traditional argument that doubts or ambiguities in insurance contracts should be resolved in favor of the insured yielded to the doctrine of *strictissimi juris.* That doctrine holds that the intent of the parties is the "lodestar." *Id.* at 969; *see also Mitchell's v. Friedman,* 157 Tex. 424, 303 S.W.2d 775, 777 (1957). In *First National,* the Fifth Circuit upheld the validity of a similar takeover clause:

[T]he clause which terminates all coverage in the event of a "taking over . . . by another concern," makes liability for the risks assumed by the bond depend upon a continuity of the same general management . . . that controlled the company when the underwriting occurred.

525 F.2d at 969.

A Mississippi case, *National Union Fire Insurance Co. v. Young,* 199 So.2d 70 (Miss. 1967), revolved around a clause in a savings and loan blanket bond in which the bond would be terminated immediately upon the taking over of the insured by another institution. The Mississippi Supreme Court concluded that Washingtion Savings had been taken over and that the bonding company was therefore released from its liability. The court based its decision on

numerous facts, of which the following are representative:

1) All of the assets had been transferred to another institution, Great Southern Savings & Loan Association;

2) A Washington Savings representative signed a letter stating, "There will be a new owner of this corporation within a short time";

3) The bonding company had no notice of the takeover until after the asserted claims had arisen.

After reviewing the record before us, we find that appellant had been taken over. We so find based on these facts:

1) Appellant held out in a letter to its lessor dated September 15, 1981, that appellant was to be "acquired" by Fidelity;

2) On September 24, 1981, the general and limited partners of appellant executed an "Agreement Among Partners" which referred to the contemplated sale of "all of the assets and business of Kelly Associates";

3) On September 25, 1981, appellant executed a Purchase Agreement with Fidelity Brokerage Service whereby Fidelity purchased all of appellee's equipment, leasehold improvements, real property leases, defined accounts, and the right to use appellee's name and goodwill;

4) On the same day the managing partner of appellant also entered into an "Employment Agreement" with Fidelity which contained a non-competition clause making that partner an officer of Fidelity;

5) During the closing period appellant was "subject in all respects to direction and control by the Buyer [Fidelity]";

6) Prior to the discovery of the loss, appellant had resigned its membership on the New York Stock Exchange.

Appellant retained little more than a handful of automobiles, some cash on hand, and certain problem accounts. The majority of appellant's former employees (70%) were hired by Fidelity. The remaining ones, with the exception of the general partners, lost their jobs.

Since appellant had virtually ceased to exist due to the "taking over" by Fidelity, the bond was no longer in effect, and appellee is relieved of any liability it originally had under the bond.

Accordingly, the judgment of the trial court is affirmed.